**Jeff Carney**
**Carney Law Firm**
**100 West Lakeview Avenue**
**Wasilla, Alaska 99654**
**Phone: (907) 373-5333**
**Fax: (907) 376-3322**
**bankrupt@mtaonline.net**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| **DAVID SEALS,** ) | |
| ) | Case No._____ |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | |
| ) | **COMPLAINT** |
| **STATE FARM MUTUAL AUTO** ) | |
| **INSURANCE CO.,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

**PLAINTIFF, DAVID SEALS,** through his attorney **JEFF CARNEY** of **CARNEY LAW FIRM** states and alleges as follows:

1. Plaintiff is a resident of the State of Alaska, residing at Wasilla.

2. At all times hereto, defendant is and was an out of state corporation licensed by and in the State of Alaska and doing business within the state and subject to the jurisdiction of this Court.

3. There is diversity between the parties and the amount in controversy is in excess

of One Hundred Thousand Dollars ($100,000). This court has jurisdiction pursuant to 28 USC §1332 due to the amount in controversy and the residency of the parties.

4. Defendant is liable for the actions and inactions of it's employees and representatives under respondeat superior and/or agency and/or vicarious liability (STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and it's employees are herein referred to as "State Farm").

5. On or about October 3, 2011, Plaintiff was injured in an automobile collision in which he was insured by State Farm for underinsured motorist (UM) coverage in the amount of $250,000 per person and $500,000 per collision. The insurance policy, numbered 64 8710-A19-02A, was in the name of David Seals, and insured him and his vehicle.

6. The collision on October 3, 2011was caused by the negligence of Bret M. Bradford.

7. The collision caused injuries to plaintiff, including but not limited to injuries of the neck, back, brain, internal organs, bladder and other soft tissues.

8. Brett M. Bradford was insured by USAA insurance company at the time but had inadequate insurance coverage to fully cover the plaintiff's losses and damages incurred in the collision of October 3, 2011.

9. The medical bills, records, wage losses, loss of earning capacity documentation was submitted to Defendant, by David Seals in his individual capacity. Such information has been submitted to Defendant on multiple occasions.

10. As a direct consequence of the accident in question, Plaintiff, David Seals has incurred medical bills and expenses in an amount exceeding $70,000.

11. As a direct consequence of the accident in question, Plaintiff, David Seals has suffered a permanent loss of earning capacity.

12. By report dated 11-08-2012 and directed to State Farm Insurance, Dr James D. Martin of Valley Chiropractic Clinic, Inc., advised State Farm: "I do not believe that Mr Seals will ever reach pre-injury status, in fact, gradual progressive degenerative changes within the soft tissues of his spine will continue as a direct result of the combined injuries sustained in his 10/03/2011 motor vehicle accident." Dr Martin advised State Farm that Mr Seals would require care 2-4 times per month for ten years, at a cost of $45,120 to $90,240.

13. State Farm has not made any offers or paid any sums to Plaintiff for his outstanding losses under Plaintiff's underinsured auto policy.

14. The collision inflicted upon Plaintiff and the liability of the underinsured tortfeasor for Plaintiff's injuries and damages are undisputed.

15. State Farm has determined that Bret M. Bradford was ninety nine percent (99%)

at fault for Plaintiff's damages related to the collision in question.

16. Plaintiff is not comparatively at fault for the collision that occurred.

17. Moreover, Plaintiff has appropriately mitigated his damages.

18. Plaintiff, in his individual capacity, and without legal counsel, made numerous demands for payment and for the limits of Plaintiff's policy due to the severity of his injuries as well as for the undisputed sums owed that State Farm is obligated to pay to Plaintiff.

19. Bret M. Bradford is an underinsured motorist under the terms of the State Farm insurance policy in question, which covers Plaintiff for his auto collision of October 3, 2011.

20. By letter of January 5, 2012, State Farm provided Plaintiff written permission to accept the limits of Bret M. Bradford's insurance policy as well as allowing him to pursue his underinsured motorist claim.

21. State Farm has completed or has had ample time to fully complete the analysis and adjustment of Plaintiff's underinsured motorist claim pursuant to 3 AAC §26.050.

22. The auto collision in question caused Plaintiff to suffer injuries to his back, neck, internal organs, spine and has caused a traumatic brain injury. As a consequence of the accident, Plaintiff has bladder troubles, tightness and pain in the right side

of his body, tightness in the upper back, constant pain, atrophy to the right leg, multilevel disc degeneration, eccentric disc osteophte complex at L4-5 with central annular fissure, resulting in left foraminal stenosis and right cerebeller weakness.

23. Moreover, the collision has caused Plaintiff to incur damages including but not limited to past and future medical expenses, probable future surgery costs, wage losses, deterioration of earning capacity, profits, impairment, disability, pain and suffering and a loss of enjoyment of life.

24. Bret M. Bradford would be liable for past and/or future: medical expenses, wage losses, loss of profits, diminished earning capacity, impairment, loss of employment benefits, pain, suffering, disability, depression, loss of capacity for the enjoyment of life, inconvenience, physical impairment, and other non-pecuniary damages in an amount greater than $250,000 (Two Hundred Fifty Thousand Dollars).

25. State Farm contractually obligated itself to pay "...damages not exceeding the limits shown on the Declarations Page, which an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury caused by an accident and sustained by such insured person."

26. To date, State Farm has paid Plaintiff nothing pursuant to his underinsured

motorist coverage, including any amount that they evaluate that is owed for, that they reserve to be paid on this claim.

27. The delay in making payment of the underinsured motorist claim has caused a deterioration of the health and creditworthiness of Plaintiff, David Seals, and has caused him to suffer from undue stress.

28. Plaintiff is a first party insured under the State Farm policy in question, and is thereby bound to treat Plaintiff with the same regard as it treats its own interests when it comes to adjustment of his claims.

29. Rather than paying the damages which State Farm determines that its insured suffered in an auto collision caused by an underinsured driver, State Farm held the money owed to date in breach of its contract covering the Plaintiff.

30. State Farm has and had an improper motive for holding the money instead of paying at least the amount it deems is owed to him, requiring the Plaintiff to bring this action for breach of contract, negligence and bad faith in its handling of his claim for underinsured motorist coverage.

31. State Farm has no provisions to arbitrate this claim and has required this Plaintiff as well as other insureds to hire legal counsel and to file lawsuits within a set time period in order for their insureds to fully recover for their damages under their State Farm insurance policy and contract.

32. This refusal to arbitrate or to pay at least the undisputed amount of claims results in the insured incurring additional costs, attorney fees and aggravation to fully recover for their damages under their State Farm insurance contract.

33. The State Farm policy fails to provide alternate ways to resolve disputes of damages for underinsured motorist claims.

34. State Farm is in breach of it's contract for not paying this claim or even making a good faith attempt to settle the matter with Plaintiff.

35. State Farm had and has an improper motive for declining to have arbitration provisions in its policies, which forces injured insureds, including the Plaintiff herein to retain legal counsel and file suit in order to obtain the benefits of their insurance policy.

36. State Farm, through it's adjustors, considers the ability of State Farm to seek costs and attorney fees against it's own insureds in litigation as a factor in declining to have arbitration or alternative dispute resolution of these types of claims on its policies as well as forcing their own insureds to have to file suit to collect the value of their damages for losses caused by underinsured motorists.

37. State Farm has bad motives for choosing to force insureds to litigate instead of arbitrate first-party claims, including deterring plaintiffs with confusion on how to proceed against State Farm and causing Plaintiff and others similarly situated to

incur litigation expenses to seek what is justly due a plaintiff. Such practices and procedures on the part of State Farm unreasonably puts State Farm's financial interests ahead of its first-party insured's interests for State Farm's substantial gain by considering which forum will award less money to plaintiff in its decision making process and/or exposing plaintiff to State Farm's attorney fees or costs if the case goes to trial thereby raising the stakes and expenses of disputing a first party claim by their insureds.

38. The cost of litigating an injury claim through trial in the United States District Court or state court can be in excess of $50,000 for each party when costs, expert fees, and attorney fees for litigating this claim are combined.

39. Defendant knew or should have known of such expenses in drafting its insurance contract and disputing or failing to justly pay Plaintiff's claim.

40. State Farm is fully aware that most individuals injured in an auto accident do not have the financial means to litigate a case against an insurance company through a trial in order to resolve their insurance claim, and uses this to discourage their own insureds from pursuing claims in order to obtain what is justly due plaintiffs under their State Farm insurance contract.

41. In not declaring unambiguously to an insured that the insured will have to sue its own carrier whom it contracted with, and in further exposing the insured to

financial ruination in situations where the trier of fact decides that State Farm's highest offer is more than the value of a plaintiff's case. Moreover, State Farm counts upon an insured's post accident deteriorated financial condition to induce a claimant who is under duress to settle for less than a fair amount of such claimants claim.

42. State Farm, through collecting and investing premiums, and through delaying payment of claims, failing to make reasonable offers of settlements or unjustly failing to act in good faith with respect to it's insured's claims, is making money on the money it holds at the expense of the rights of its insureds.

43. State Farm has been provided with properly executed releases of information to allow it unbridled access to all records that are reasonably necessary to adjust the claim of Plaintiff.

44. State Farm failed and declined to pay the claim of Plaintiff, David Seals, after the pertinent information was available to it and/or provided by Plaintiff, in violation of A.S. 21.36.125(a)(4).

45. State Farm has engaged in the practice of repeatedly requesting the same documentation from Plaintiff, although the Defendant has had ample documentation, materials, medical reports and billings to promulgate a fair settlement with Plaintiff.

46. State Farm has engaged in the practice of repeatedly switching adjustors with respect to the insurance claim of Plaintiff, David Seals, much as used car salesmen "tag team" their customers.

47. After State Farm switched adjustors to Steve McKitrick, of Kailua Kona, Hawaii, adjustor McKitrick advised Plaintiff that he needed to provide State Farm with "an EMG study." Adjustor McKitrick knew or should have known that such study would cost the Plaintiff approximately $4,000.

48. When Plaintiff, David Seals looked into obtaining the EMG study requested by adjustor McKitrick, he learned that the cost would be approximately $4,000, and subsequently advised McKitrick as such by letter of December 30, 2013, and that if State Farm wanted an EMG study done that it would have to pay for it.

49. By letter of January 24, 2014, adjustor McKitrick advised: "At this time no EMG study will be requested."

50. State Farm's most recent ploy to discourage Plaintiff's claim was to require the Plaintiff to be subjected to an "independent medical exam," but that such an exam could not be conducted and concluded before April 2, 2014, the date by which adjustor McKitrick has represented to Plaintiff Seals that the statute of limitations runs on his claim.

51. When asked why State Farm had waited so long to request an independent

medical exam, Adjustor McKitrick's reply was: "I can't answer that."

52. State Farm has failed to attempt in good faith to make prompt and equitable settlement of the claims of Plaintiff, David Seals, and others similarly situated in which liability is reasonably clear, in violation of A.S. 21.36.125(a)(6).

53. State Farm has engaged in a pattern or practice of compelling insureds to litigate for recovery of amounts due under insurance policies by offering nothing, or substantially less than the amounts ultimately recovered in actions brought by those insureds, in clear violation of A.S. 21.36.125(a)(7), as well as requiring such insured's to file suit within a prescribed time period after a collision under the terms of it's contract.

54. State Farm compelled David Seals, the insured in this case, in which liability is clear, to litigate for recovery of an amount due under an insurance policy by not offering anything, or an amount that does not have an objectively reasonable basis in law and fact and has not been documented in the insurer's file, in violation of A.S. 21.36.125(a)(8).

55. State Farm failed to pay David Seals those portions of the claim not in dispute within 30 working days after the receipt of a properly executed statement of claim, proof of loss, or other evidence of loss in violation of 3 AAC §26.070(a)(2).

56. State Farm's conduct is governed and regulated by A.S. 21.36.125(a) and 3 AAC, Chapter 26.

57. State Farm knew or should have known of, and adhered to, the rules, laws and regulations set forth in A.S. 21.36.125(a) and 3 AAC, Chapter 26.

58. The violation of A.S. 21.36.125(a) is a breach of the covenant of good faith and fair dealing, as well as negligence and/or breach of its contract with the insured, Plaintiff, David Seals.

59. Violation of A.S. 21.36.125(a) is evidence of the breach of the covenant of good faith and fair dealing, as well as negligence and breach of contract with the plaintiff.

60. Violation of 3 AAC, Chapter 26, is a breach of the covenant of good faith and fair dealing with Plaintiff by State Farm.

61. Those violations of 3 AAC Chapter 26, as set forth above are unfair claim settlement practices in violation of A.S. 21.36.125 by State Farm, resulting in additional damages to Plaintiff David Seals. See also 3 AAC 26.010(a) and (b).

62. Requiring insureds to retain counsel and file lawsuits against State Farm to resolve first party insurance claims is an unreasonable, outrageous and unconscionable act against its insureds and the Plaintiff, David Seals.

63. State Farm induces consumers to obtain it's insurance policies through a

continuous stream of advertisements representing, among other things, "a better state with State Farm" inferring that a consumer will have better insurance coverage and more fair treatment than that which would be obtained from it's competitors.

64. In failing to advise insureds when they purchase insurance, of the expenses involving in litigating, and the exposure for State Farm's attorney fees in litigation, as well as the lack of reasonable alternative means of resolution under an insurance policy is unjustified, unreasonable, unfair, deceptive and unconscionable.

65. State Farm is liable to David Seals for compensatory and punitive damages for the breach of contract perpetrated against Plaintiff.

66. The actions and inactions of State Farm have caused the Plaintiff to be placed under duress and has subjected him to mental distress and Defendant is liable to Plaintiff for compensatory damages, including mental distress, and punitive damages for breach of the covenant of good faith and fair dealing, in an amount within the jurisdiction of this court, the exact amount to be determined by the trier of fact.

67. State Farm is liable for punitive or exemplary damages for it's reckless disregard, and/or willful disregard, and/or wanton disregard for Plaintiff's rights and

interests, and for outrageous conduct, reckless indifference and conscious action and deliberate disregard for Plaintiff's interests, in an amount to be determined to be just by the trier of fact.

68. The conduct of State Farm was and is outrageous, including acts done with malice aforethought or bad motives, or evidenced a reckless indifference for the rights of David Seals and others similarly situated.

WHEREFORE, Plaintiff prays for a judgment against Defendant, in an amount within the jurisdiction of this Court, to be established by the trier of fact for all damages, plus interest, costs and attorney fees, but in no event less than $250,000, and for such other and further relief as to the Court might seem just and equitable.

Dated: March 31, 2014

*/s/ Steven Jeffrey Carney*

Steven Jeffrey Carney
Attorney for Plaintiff
Alaska Bar No 84-11104